**Vincent W. Davis, Esq. (SBN 125399)**
**Daniel C. Sharpe, Esq. (SBN 267075)**
**Law Offices of Vincent W. Davis & Associates**
**150 N. Santa Anita Avenue, Suite 200**
**Arcadia, CA 91006**
**Phone: (626) 446-6442**
**Facsimile: (626) 446-6454**

Attorneys for Plaintiff Keith Thornton

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH THORNTON, an Individual<br><br>PLAINTIFF<br><br>v.<br><br>COUNTY OF LOS ANGELES, by and through the LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES; DAISY CRUZ, an Individual; CAROL PORRAS, an Individual; and DOES 1 through 10, inclusive,<br><br>DEFENDANTS | No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Violation of Civil Rights Under 42 U.S.C. § 1983 – 1st Amendment – Retaliation<br><br>2. Violation of Civil Rights Under 42 U.S.C. § 1983 – 5th and 14th Amendment – Violation of Procedural and Substantive Due Process<br><br>3. Violation of Civil Rights Under 42 U.S.C. § 1983, 14th Amendment – Discrimination<br><br>4. Violation of Civil Rights Under 42 U.S.C. § 1983 – Monell Liability |

Plaintiff alleges as follows:

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

## JURISDICTION AND VENUE

1.      This is an action for damages for violations of Plaintiff's federal civil rights, pursuant to 42 U.S.C. § 1983, including violations of the First, Fifth, and Fourteenth Amendments to the United States Constitution, arising from the misconduct as alleged in more detail below.

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1343(3) and 1343(4), which provides for additional jurisdiction in this Court for all suits brought pursuant to 42 U.S.C. § 1983 and other federal statutes. Jurisdiction is also conferred pursuant to 28 U.S.C. § 1331 because the claims for relief derive from the United States Constitution and the laws of the United States.

3.      Venue is proper in this Court because, upon information and belief, one or more of the Defendants reside, transact business, or have offices in Los Angeles County and many of the acts and omissions alleged herein took place in Los Angeles County.

## PARTIES

4.      Plaintiff KEITH THORNTON (hereinafter "Plaintiff" or "THORNTON") is an individual, competent adult, who, during all times relevant as described in more detail below, engaged with the Los Angeles County Department of Children and Family Services ("DCFS"), by and through numerous employees, representatives, or agents of the same, in and around Los Angeles County, both individually and as the

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

prospective adoptive parent of minor foster children M.A., D.A., and I.S. (hereinafter "Minor Children").

5.     Defendant COUNTY OF LOS ANGELES is a local public entity organized under the laws of the State of California (hereinafter referred to as "COUNTY OF LOS ANGELES" or "COLA").  The Los Angeles County Department of Children and Family Services (hereinafter referred to as "DCFS" or "the Department") is an agency of Defendant COUNTY OF LOS ANGELES designated to administer laws and programs relating to protective services for children, foster care, and adoptions. DCFS operates under the policy direction of the Los Angeles County Board of Supervisors and the California Departments of Social Services and Health Services.

6.     At all times relevant herein, DCFS employed Defendant DAISY CRUZ (hereinafter referred to as "CRUZ") as a Social Worker charged with the investigation, monitoring, and management of juvenile dependency matters, which included – at certain times as stated below – the matter of the minor children, M.A., D.A., and I.S. Defendant CRUZ was an individual residing, on information and belief, in the County of Los Angeles, and at all times relevant herein was an officer, agent and employee of Defendant COLA and DCFS. Defendant CRUZ is sued herein in both her individual capacity and in her official capacity as an employee of the County of Los Angeles.

COMPLAINT FOR DAMAGES

7.     At all times relevant herein, DCFS employed Defendant CAROL PORRAS (hereinafter referred to as "PORRAS") as a Social Worker charged with the supervision and monitoring of other social workers, which included – at certain times as stated below –Defendant CRUZ. Defendant PORRAS was an individual residing, on information and belief, in the County of Los Angeles, and at all times relevant herein was an officer, agent and employee of Defendant COLA and DCFS. Defendant PORRAS is sued herein in both her individual capacity and in her official capacity as an employee of the County of Los Angeles.

8.     Plaintiff is informed and believes and thereon allege that Defendants, Does 1 through 10, inclusive (hereinafter referred to as "Does"), are now and at all times herein mentioned in this Complaint were individuals and residents or were entities – either governmental or otherwise – operating and/or doing business in and around the County of Los Angeles, State of California, and were in some manner employed by and acting within the scope of their employment on behalf of Defendant COLA, whether by and through DCFS or some other means.

9.     Defendant COLA was at all times alleged herein to be responsible for the appointment and promotion of employees of COLA, and for the supervision, training, instruction, discipline, control, and conduct of said employees.

10.    At all times alleged herein, Defendant COLA had the power, right, and duty to control the manner in which the individual defendants carried out the objectives of

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

their employment and to assure that all orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, the laws of the State of California, and the laws of the local municipalities.

11.    The unknown named defendants – identified herein as "Doe" Defendants 1 through 50, include, but are not limited to, unknown social workers, supervisors, managers, investigators, deputy directors, who participated in, approved of, or otherwise acquiesced in the actions and misconduct of the other named defendants as described herein, resulting in the deprivation of Plaintiff's civil rights and injuries to her person, as is described below. These unknown defendants include policymakers that created, fostered, acquiesced in, ratified, and/or maintained the policies, customs, and/or practices that caused the deprivation of Plaintiff's constitutional rights and his injuries.

12.    Plaintiff is ignorant of the true names and capacities of these Doe Defendants, though all are believed to have been employed by COLA, or acting in concert with other named defendants and in their capacity were acting as state actors, but alleges that each such defendant was in some intentional or negligent manner responsible for the injuries suffered by Plaintiff.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

13.     Defendants, and each of them, performed the wrongful acts and omissions alleged herein in bad faith and with knowledge that their conduct violated well and clearly established and settled law.

14.     At all times material herein, defendants, and each of them, were acting as the employees, agents, representatives, and officers of every other defendant herein, and within the course and scope of such employment and agency.

## FACTS COMMON TO ALL CLAIMS

15.     Each and every allegation set forth in each and every averment of this Complaint is hereby incorporated by this reference in each and every other averment, allegation, and count of this Complaint.

16.     Plaintiff was previously deprived of his interests protected by the Constitution and/or laws of the United States of America, as well as California, and suffered injuries to his person, and such deprivation was caused by defendants – by commission and omission – while defendants acted under color of law.

17.     All acts and/or omissions perpetrated by each defendant, except any governmental entity defendant or any defendant only in their official capacity, were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Plaintiff, and were done so despicably and with evil motive and/or intent.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

COMPLAINT FOR DAMAGES

18.    In or around 2012, Plaintiff KEITH THORNTON moved to the greater Los Angeles area and entered the field of law enforcement. Plaintiff graduated from the Los Angeles Police Academy with top honors as class president.

19.    In or around 2013, Plaintiff, who is an African American Male and identifies as gay, sought to become an adoptive parent. Plaintiff and his long-term partner, Sergio Linares, began the process of becoming certified foster parents through the Southern California Foster Family & Adoption Agency ("SCFFAA"). By early 2014, both Plaintiff and Mr. Linares were fully certified as foster parents.

20.    On or about April 17, 2014, Plaintiff and Mr. Linares met with employees of Defendant COLA/DCFS at the Belvedere Office and accepted placement of minor foster children, M.A., D.A., and I.S. – three sibling boys with the ages 3 years, 2 years, and 2 months, respectively. During the meeting and acceptance of placement, Plaintiff learned that Defendant COLA/DCFS had some difficulty placing the minor children due to their challenges and needs, including exposure to alcohol and drugs during pregnancy, as well as the fact that the children were removed from their biological parents due to substantiated allegations of neglect and suspected physical and emotional abuse.

21.    Thereafter, Plaintiff and his partner, Mr. Linares, met with Defendant CRUZ, who was assigned to oversee the placement of minor children as well as monitor the foster adoption process.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

COMPLAINT FOR DAMAGES

22.     Prior to the placement with Plaintiff and Mr. Linares, the minor children had been temporarily placed with Ana Garcia, who ran a foster home.

23.     As part of her job as the assigned social worker, Defendant CRUZ made monthly home visits. During her home visits, Defendant CRUZ frequently commented approvingly on the fact that Mr. Linares, who is Hispanic, was teaching the minor children Spanish.

24.     During her home visits, Defendant CRUZ frequently commented approvingly on the fact that Mr. Linares, who attended a Catholic church, took the minor children to Catholic services. Plaintiff THORNTON, by contrast, attended a Methodist church pursuant to his own religious beliefs.

25.     During the home visits, Defendant CRUZ frequently stated that she believed it was necessary for the minor children to have regular contact with Ana Garcia, stating "Ana really loved them but could not adopt them at this time."

26.     Plaintiff understood that Defendant CRUZ's demand that the minor children was not based on a court order but Defendant CRUZ's personal desire to have the children maintain communication with Ms. Garcia, allowing for the minor children to speak with Ana Garcia regularly by phone. When Defendant CRUZ expressed her desire that the minor children maintain contact with Ms. Garcia, Defendant CRUZ acknowledged that she and Ms. Garcia were close friends.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

27.    During the first several weeks that the minor children were placed with Plaintiff, Defendant CRUZ explicitly encouraged Plaintiff to take the minor children to visit Ana Garcia at the foster home in Whittier, California. Although Plaintiff had a friendly interactions with Ms. Garcia, Plaintiff did not understand Defendant CRUZ's encouragement to be a suggestion but in fact a demand based on what Defendant CRUZ appeared to believe was best for the minor children.

28.    In the summer of 2014, Plaintiff took the minor children to visit Ms. Garcia at the behest of Defendant CRUZ. During the visit, the minor children discovered that Ms. Garcia had subsequently taken in an additional female foster child, and the minor children became very upset at seeing the rooms and other areas of the home changed from the way it appeared when they were temporarily placed with Ms. Garcia. The minor children continued to react poorly during the visit, and began acting out emotionally as a result. Eventually, Plaintiff had to cut the visit short as a result. Thereafter, the minor children expressed emotional hostility for several months.

29.    At the next monthly home visit, Defendant CRUZ asked how the trip with the minor children to see Ms. Garcia had been. Plaintiff explained that Ms. Garcia was very nice, but the minor children reacted very poorly to seeing her home in a different state and that Ms. Garcia had taken in an additional foster child who was now living in the minor children's old room. Plaintiff went on to state that he spoke with Ms. Garcia and, in light of the negative effect it had on the minor children, Plaintiff would

not be taking the minor children back to Ms. Garcia's home, and would phase out regular communication between Ms. Garcia and the minor children for now. Plaintiff explained to Defendant CRUZ that the children needed to heal, mature, and establish a connection with Plaintiff and Mr. Linares as prospective adoptive parents. Defendant CRUZ reacted by strongly encouraging Plaintiff to reconsider and maintain contact between the minor children and Ms. Garcia, going on to claim that the only reason Ms. Garcia did not move forward with adopting the minor children was because she had a medical issue that prevented her from doing so. Plaintiff acknowledged that the minor children would still be able to communicate with Ms. Garcia, but that their emotional development and well-being had to come first. Defendant CRUZ simply kept reiterating that Ms. Garcia had almost adopted the children and deserved to stay in touch with them, which Plaintiff understood to be based on Defendant CRUZ's personal preferences rather than any actual court order or legal requirement.

30.     After Plaintiff explained this to Defendant CRUZ, Plaintiff and Mr. Linares noticed a sharp change in Defendant CRUZ's attitude and interactions with them; Defendant CRUZ no longer appeared friendly or supportive of Plaintiff and Mr. Linares' efforts as prospective adoptive parents, but instead became overtly negative and reasonably appeared to be looking for reasons to criticize Plaintiff and Mr. Linares whenever she could.

31.    Plaintiff understood from the outset of the placement of the minor children that the youngest child, minor I.S., had a mildly misshapen head in that the top of his skull was flatter than normal. Defendant CRUZ had specifically informed Plaintiff that minor I.S. would require a corrective helmet in order to allow his skull to heal properly.

32.    Plaintiff brought minor I.S. to his primary care physician, Dr. Lindsay Wells, M.D., a pediatrician with the UCLA Santa Monica Medical Center. Dr. Wells tentatively evaluated minor I.S. and advised Plaintiff that a corrective helmet was not necessary, but out of caution referred Plaintiff and minor I.S. to Dr. Yoshio Setoguchi, M.D., of the Pediatric Craniofacial Department at UCLA Health Santa Monica Pediatrics. Dr. Setoguchi evaluated minor I.S. separately, then explained to Plaintiff that minor I.S.'s head issues were not severe and were in fact healing naturally. Dr. Setoguchi advised Plaintiff that minor I.S. should not be given a corrective helmet but instead should simply be encouraged to sleep on his belly so that the natural healing can continue.

33.    At the next home visit, Plaintiff informed Defendant CRUZ of the doctor's evaluation and the positive diagnosis minor I.S. received. Rather than being pleased with Plaintiff's proactive approach or the good news regarding minor I.S. healing without the need for additional medical intervention, Defendant CRUZ aggressively criticized Plaintiff and Dr. Setoguchi, stating, "You guys need to take [minor I.S.]

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

back to the doctor and get a helmet put on his head. I have seen over and over again with other children this becoming a permanent issue later on." Plaintiff calmly and politely disagreed, telling Defendant CRUZ that Dr. Setoguchi was not just a respected physician but was in fact a specialist in the area of pediatric craniofacial issues, and his professional medical opinion was that minor I.S. would actually be worse off with a corrective helmet, as minor I.S. would have to wear it for a minimum of six months, twenty-three hours per day, and it would likely cause unnecessary physical and emotional trauma to the child. Defendant CRUZ, who is not a medical professional, asserted that a public health nurse employed by Defendant COLA/DCFS, identified as Margaret Medrano, had previously suggested that minor I.S. would need a corrective helmet. Defendant CRUZ commented that she was very concerned to hear Plaintiff stand by Dr. Setoguchi's medical opinion and not that of a public health nurse who had not actually examined minor I.S. at any time.

34.     Out of abundance of caution, and because of Defendant CRUZ's aggressive position regarding a corrective helmet for minor I.S., Plaintiff took minor I.S. back to Dr. Setoguchi for a subsequent appointment. Plaintiff explained to Dr. Setoguchi his interaction with Defendant CRUZ. In response, Dr. Setoguchi reiterated that it was medically inappropriate for minor I.S. to have a corrective helmet.

35.     Subsequent to Plaintiff's interaction with Defendant CRUZ regarding minor I.S.'s medical needs, Defendant CRUZ began doing unannounced visits rather than

providing any notice of visitation. Plaintiff at one point was forced to ask that Defendant CRUZ contact Plaintiff ahead of time so that he could make sure that he and the minor children were home so the visit could occur. Defendant CRUZ became upset at Plaintiff's request, but did not provide any explanation as to why.

36.     Some of the behavioral problems that began to arise after the visit to Whittier, California, continued with the minor children, resulting in minors M.A. and D.A. being kicked out of their head start program in the fall of 2014. Plaintiff researched special education options and located an intensive behavioral treatment program and school that addressed their needs, and both minors M.A. and D.A. were accepted into the program as they met all the requirements of special needs students.

37.     Throughout the time that Defendant CRUZ worked as a social worker for the minor children, though, Defendant CRUZ consistently denied that the minor children had any special needs.

38.     In the fall of 2014, Plaintiff and his partner, Sergio Linares, began experiencing relationship difficulties due to Mr. Linares committing infidelity. In December of 2014, after discussing it at length, Plaintiff and Mr. Linares decided to separate and mutually agreed that Plaintiff would take full control and responsibility for the minor children.

39.     The same day that Mr. Linares left the home, Plaintiff contacted Defendant CRUZ by phone and informed her of the situation. Defendant CRUZ confirmed that

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

Mr. Linares had contacted Defendant COLA/DCFS already, and told Plaintiff that a meeting needed to occur to work out how everyone would proceed.

40.     Shortly thereafter, Plaintiff met with social workers from the foster family agency. The social workers acknowledged that they had discussed the matter in detail with Defendant CRUZ and others employed by Defendant COLA/DCFS, and jointly prepared a case plan that focused on Plaintiff and Mr. Linares staying together as a couple, which belied and ignored Plaintiff's repeated assertions that their relationship was over and that Plaintiff would be proceeding as a single parent. By the end of the meeting, Plaintiff was instructed to attend both weekly couples counseling with Mr. Linares and individualized counseling, and that Mr. Linares was expected to "sleep in the bed with [Plaintiff] at night" regardless of their relationship status. Plaintiff understood that, although Defendants CRUZ and PORRAS were absent from the actual meeting, that the case plan and corresponding requirements that Plaintiff remain in a relationship with Mr. Linares and attend multiple counseling programs were at the behest of Defendants CRUZ and PORRAS.

41.     Plaintiff was distraught and offended by the expectation that he and Mr. Linares force their relationship to continue solely due to the demands of social workers. However, Plaintiff attempted to follow their demands in an effort to avoid problems with Defendant COLA/DCFS, including attending relationship counseling regularly.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

COMPLAINT FOR DAMAGES

42.     During therapy sessions, Plaintiff was advised that it was in the best interests of everyone that he separate from Mr. Linares completely, and that Mr. Linares had ceased participating in therapy despite Plaintiff continuing in good faith; however, when Plaintiff brought this up with Defendant CRUZ, she responded by telling Plaintiff that being single would threaten his ability to successfully adopt the minor children. Defendant CRUZ did not elaborate on why Plaintiff acting as a single parent would threaten his ability to adopt the minor children.

43.     Plaintiff continued to attempt to salvage his relationship with Mr. Linares at the behest of Defendant CRUZ for several months, until he could no longer do so. Plaintiff contacted the foster family agency and informed them that neither he nor Mr. Linares could make the relationship work and they mutually agreed that Plaintiff was the only one who wished to continue with the adoption of the minor children. In response, Plaintiff was informed that social workers would be visiting more often and without notice as a result.

44.     After Plaintiff and Mr. Linares ceased their relationship, Plaintiff noticed an overt difference in the way that Defendant CRUZ conducted her home visits, which became weekly. Defendant CRUZ would begin every visit by asking the eldest child, minor M.A., to tell her "the bad things that happened this week." This usually made M.A. very uncomfortable and made him feel like he was in trouble and would not know how to respond. Plaintiff would often be forced to reassure M.A. that he could

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

talk about what the family had done together over the last week. Around this time, Plaintiff began to notice that minor M.A. would begin to state that "the lady is going to take me away," which Plaintiff reasonably understood to be M.A. attempting to express concern that Defendant CRUZ would cause M.A. to be placed in another home.

45.     After Plaintiff and Mr. Linares ceased their relationship, Defendant CRUZ repeatedly asked Plaintiff whether he had taken over teaching the minor children Spanish. Each time, Plaintiff acknowledged that he was not, as he did not speak Spanish, which appeared to upset Defendant CRUZ.

46.     During a home visit after Plaintiff and Mr. Linares ceased their relationship, Defendant CRUZ asked Plaintiff whether he was taking the minor children to church services. Plaintiff confirmed that he took them to service every Sunday. Defendant CRUZ then demanded that Plaintiff identify the specific church he attended. Plaintiff reiterated what he had previously told Defendant CRUZ that he was a member of United Methodist Church, and then talked about how much the minor children enjoyed attending service and singing in the children's choir.

47.     Defendant CRUZ then asked for the location of United Methodist, and Plaintiff again told Defendant CRUZ it was in Hollywood. Defendant CRUZ responded by stating that "It's very concerning to me that you are taking [the minor children] so far away to a church. It's emotionally and even physically draining to the children to go

so far." Plaintiff calmly reiterated that the minor children enjoyed the services at United Methodist and were not harmed by going to them.

48.    In response, Defendant CRUZ stated, "Well, Sergio used to take them to his Catholic Church." Plaintiff calmly stated that Mr. Linares no longer lived with him or the minor children, and reiterated how much the minor children enjoyed the services and choir at United Methodist Church.

49.    Defendant CRUZ then turned to minor M.A. – who was four years old at this time – and asked, "Do you like Sergio's church?" Minor M.A. replied, "No, I like my daddy's church."

50.    Defendant CRUZ then asked Plaintiff if she could go with Plaintiff and the minor children to attend their church service and observe them. Plaintiff, who at this point reasonably understood that Defendant CRUZ wished to dictate the religious preferences of his household, politely told Defendant CRUZ that she could not.

51.    In or around August of 2015, Plaintiff and the minor children moved away from Sunland to Palmdale, California in order to live in a bigger home with more space for the minor children to play and live.

52.    During a home visit at the Palmdale residence, Defendant CRUZ stated that there was an "issue" that needed to be addressed. When Plaintiff asked what was going on, Defendant CRUZ stated, "It's really concerning to me that you are way out here in Palmdale now, [because] it's a long ride for me. Is there a reason why you left

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

Sunland? Was something going on?" Plaintiff politely explained that living in a larger home gave the minor children more room and a large yard to play in, and noted that the foster family agency had already approved the home. Plaintiff then asked what was the actual problem. Defendant CRUZ responded that there was no problem, and did not inspect the home but instead focused on asking the minor children about any "bad" things that have happened recently, despite the minor children attempting to discuss positive events such as family trips and interactions with Plaintiff's extended family during visits.

53.     In or around October of 2015, Defendant COLA/DCFS hosted a foster care adoption event at Citrus College in Glendora, California. Plaintiff attended the event, wishing to volunteer based on his strong belief in the importance of adoption and helping children in the foster system. During the event, Plaintiff was interviewed by a reporter, and part of his interview was published in a news article. During the interview, Plaintiff was identified as an openly gay man adopting foster children as a single parent, extolling the importance of foster care adoption. During the next home visit after the publication of the news article, Defendant CRUZ accused Plaintiff of being inappropriate in agreeing to be interviewed. Plaintiff expressed surprise and attempted to understand why Defendant CRUZ was upset. Defendant CRUZ would not explain why the news article upset her; however, Plaintiff reasonably suspected

COMPLAINT FOR DAMAGES

that Defendant CRUZ was upset that Plaintiff's sexuality and/or status as a single parent were disclosed in the news article.

54.     In or around December of 2015, Plaintiff grew concerned regarding the placement of the minor children in schools that would accommodate their behavioral and educational needs. Despite repeated messages, Defendant CRUZ did not return calls from Plaintiff or the therapist for the minor children, causing the minor children to be pushed back further and further on waiting lists.

55.     Previously, Defendant CRUZ had communicated to Plaintiff that minor D.A. should be deemed "emotionally unstable" because D.A. refused to talk to Defendant CRUZ during the visits in which she repeatedly asked him about what "bad things" happened recently. In response to Defendant CRUZ's insistence that D.A. had mental health issues, Plaintiff took minor D.A. to see a therapist shortly before Christmas of 2015. The therapist evaluated D.A. and determined that he was well-behaved and presented no issues, and suggested that putting D.A. in a program would be detrimental to his emotional well-being. The therapist then inquired as to why Plaintiff sought mental health treatment for D.A., and Plaintiff explained what Defendant CRUZ had asserted re emotional instability.

56.     Based on that conversation, the therapist wished to speak with Defendant CRUZ immediately, and requested her number from Plaintiff. Plaintiff provided the number and the therapist contacted Defendant CRUZ in Plaintiff's presence.

57.     Defendant CRUZ answered the call and the therapist respectfully stated that minor child D.A. presents no problems and complimented Plaintiff on his parenting, then firmly stated that the emotional wellness program was not appropriate for D.A.

58.     A few days later, Plaintiff received a call from Defendant CRUZ, who stated that "it's very concerning to me that you are not getting the services for the children that are offered to you by the county" and went on to claim that she had received several phone calls from behavioral therapists stating that you have not answered their calls." Plaintiff had no idea what Defendant CRUZ was talking about, and proceeded to call each and every therapist that Defendant CRUZ referenced. Each and every time, Plaintiff was told that was not the case, and in fact was told bluntly that he was in regular contact but that the therapists had great difficulty reaching Defendant CRUZ as she does not return their calls.

59.     During the next home visit, Plaintiff told Defendant CRUZ that he wanted to have a meeting with all social workers on his adoption case, as he has done everything required and believed that the Defendant COLA/DCFS as not moving forward, which greatly concerned him. Defendant CRUZ responded by stating that she was "very concerned" about Plaintiff not returning a call she made a few weeks ago and believed that a group meeting was necessary to address Plaintiff's failures. Defendant CRUZ then stated that she had spoken to Marissa Martinez, the social worker handling the adoption, and that Defendant COLA/DCFS is postponing the

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

adoption at this point. When Plaintiff asked what she was talking about, Defendant CRUZ only responded that "a lot of issues have come up with you. Once my supervisor is here, we will address them."

60.    On or about January 14, 2016, Plaintiff had a meeting with Defendant CRUZ, her Defendant PORRAS, and Marissa Martinez, along with the FFA social worker Cristina Pon and her supervisor Kimberly Sutton, and FFA social worker Nicolaus Garcia. The meeting was held in Plaintiff's home. On the recommendation of Ms. Pon, Plaintiff had a friend come to watch the minor children during the meeting.

61.    During the meeting, Defendant CRUZ repeated her prior misrepresentations regarding the therapists not being able to reach Plaintiff. In response, Plaintiff calmly explained that was not true, and in fact Defendant CRUZ refused to communicate with the minor children's therapists. Plaintiff produced a letter from a supervisor of Children's Bureau, confirming that Plaintiff was in constant contact with therapists for the minor children and Plaintiff and that Defendant CRUZ was refusing to communicate with them. Towards the end of the meeting, the other social workers expressed agreement with Plaintiff and stated they would be in touch with Plaintiff re finalizing the adoption.

62.    At the end of the meeting, Defendant CRUZ, who appeared to be furious, stated, "You know what? I'll just do a quick inspection of the children since I'm

COMPLAINT FOR DAMAGES

here." Marissa Martinez and Defendant CRUZ then went to a back room of the house with minor children D.A. and M.A. and closed the door.

63.     Approximately five minutes later, Defendant CRUZ opened the door and flagged over Defendant PORRAS, who entered the room and shut the door. Shortly thereafter, Ms. Porras came out and stated to Plaintiff "We have a problem. Come with me." Plaintiff followed her back into the room. Defendant PORRAS then demanded that Plaintiff remove each child's clothing. Plaintiff complied and watched Defendants CRUZ and PORRAS inspect the children closely. There were no bruises, marks, discolorations, or anything else on the children except very minor scratches that were self-inflicted due to a skin condition.

64.     Defendant CRUZ then pointed to M.A.'s leg, at what appeared to be a tiny circular scratch and said, "look, Carol." Defendant PORRAS turned to Plaintiff and told him to go back to the living room. Plaintiff returned to the living room and informed the other social workers what was going on.

65.     After Defendants CRUZ and PORRAS came out, other social workers approached Plaintiff and told him that Defendants CRUZ and PORRAS were alleging abuse. Plaintiff reacted with extreme surprise, given the lack of actual bruising or other indications of abuse. Plaintiff asked the other social workers if he could take pictures, and they immediately informed Plaintiff it was a good idea because there were no marks on the children. Plaintiff began taking pictures of minor child M.A. to

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

prove there were no marks. Defendant PORRAS, who saw Plaintiff through a window, immediately ran inside and demanded that Plaintiff stop taking pictures and requested that he turn over his phone to her. Plaintiff stopped taking pictures but refused to give Defendant PORRAS his phone.

66.    A few minutes later, Defendant PORRAS stated to Plaintiff, "We are taking the kids." Defendant CRUZ then interjected, claiming that minor child D.A. stated "you whooped his ass" and that they "couldn't ignore it." Defendant CRUZ went on to claim that minor child D.A. kept running behind a couch and saying "belt, belt, belt" and that minor child M.A. responded by stating that "Daddy's really going to be mad and whoop both of our asses." Defendant CRUZ went on to say that all three children were clearly afraid of Plaintiff, despite the fact that minor child I.S. was not present in the back room during the visit, and was barely two years old.

67.    Plaintiff did not receive a Notice of Emergency Removal until approximately January 29, 2016 – just over two weeks after Defendants removed the minor children. This notice was not directly provided by Defendant CRUZ or Defendant COLA/DCFS, but was instead provided through his retained counsel after investigation into the status of the juvenile dependency matter. Defendants therefore failed to provide notice to Plaintiff regarding removal proceedings in violation of state law, as Plaintiff qualified as a prospective adoptive parent pursuant to the

COMPLAINT FOR DAMAGES

23

California Welfare & Institutions Code, including but not necessarily limited to §

366.26(n).

68.    The Notice of Emergency Removal, prepared by Defendants CRUZ and

PORRAS, alleged that minor child M.A. claimed to have been physically abused with

a belt, yet the only alleged evidence was a "linear vertical mark on his right leg" and

not any bruise, welt, or other mark that would potentially denote actual injury.

Furthermore, no such mark was on M.A.'s leg when Plaintiff photographed the same

area just prior to the removal.

69.    Subsequent to the removal of the minor children by Defendants, Plaintiff

contacted Defendant CRUZ by phone and requested visitation with the minor

children until the matter was resolved by the juvenile dependency court, which was

Plaintiff's right as a prospective adoptive parent. Defendant CRUZ responded by

telling Plaintiff that she no longer considered him to be a prospective adoptive parent

and therefore had no right to visitation.

70.    On or about February 18, 2016, Defendant CRUZ submitted an interim review

report, reviewed by Defendant PORRAS, recommending the minor children be placed

with another foster home for adoption. Attached to the report were emergency

physical evaluation reports for each minor child. In those attached reports, there was

no description of bruising or other affirmative evidence of physical abuse, only minor

scratch marks that were admittedly self-inflicted as to minors M.A. and D.A., as well

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

as a "small healing lesion" on M.A.'s right thigh, with the words "I don't know" written by the evaluating doctor on the form.

71.     On or about February 16, 2016, Detective Sergeant Mike Becker (#005331) of the Los Angeles County Sheriff's Department Special Victims Bureau authored a supplemental report, which summarized his investigation into the alleged physical abuse that Defendants CRUZ and PORRAS used as a justification to remove the minor children on January 14, 2016. In the report, Sgt. Becker acknowledged that the emergency response investigator Sylvia Torres had interviewed minors M.A. and D.A., and that, although M.A. repeatedly asserted that Plaintiff hit him on the thigh with a belt "every day," she found it difficult to confirm if his statements were at all truthful given that they would change and not make sense when she questioned M.A. about any specific incidence. The report also acknowledged that the medical evaluations of the minor children did not uncover any evidence of abuse. The report also acknowledged that both minor children repeatedly requested to be returned to Plaintiff's care. According to Sgt. Becker's report, Sgt. Becker interviewed minors M.A. and D.A., and concluded that minor D.A. was being coached on the questions prior to his interview, and confirmed several shifting inconsistencies in the vague assertions that Plaintiff engages in physical discipline at all. The report concluded with Sgt. Becker's assertion that "[b]ased on my investigation there is no supporting evidence to substantiate [M.A.] or [D.A.] being abused."

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

72.     Hearing on the removal was scheduled in juvenile dependency court on February 29, 2016. At the hearing, the matter was continued to March 15, 2016, in part due to the fact that Defendant CRUZ did not show up to court for the hearing. While waiting for the matter to be called, county counsel and representative of Defendant COLA/DCFS, attorney Michel H. Eisner, Esq. (SBN #96371) communicated to Plaintiff's attorney of record the following: If Plaintiff chose to stop fighting the removal of the minor children and not go forward with any hearing accusing Defendants of misconduct, Defendant COLA/DCFS would assist Plaintiff in adopting different foster children; but if Plaintiff persisted in seeking return of the minor children, Defendants would never allow Plaintiff to adopt any child in Los Angeles County. Plaintiff and his counsel of record reasonably interpreted this statement to be a threat against Plaintiff regarding his right to be a foster parent and declined the offer of Ms. Eisner, which was reasonably understood to be conveyed on behalf of Defendants.

73.     On or about March 15, 2016, the hearing was again continued due to the juvenile court calendar being excessively full, and was rescheduled for March 18, 2016.

74.     On or about March 18, 2016, hearing was held regarding the emergency removal from January 14, 2016. Defendant CRUZ testified at the hearing. During her

COMPLAINT FOR DAMAGES

testimony, Defendant CRUZ repeatedly made false or misleading statements, including but not limited to the following:

    (a)    Testifying that none of the minor children had any medical issues or special needs, which was immediately dispelled when the judge read aloud various diagnosed medical conditions from DCFS documents;

    (b)    Testifying that Plaintiff did not follow up with medical care providers, despite letters and other documentation proving the opposite; and

    (c)    Testifying that she personally observed signs of physical abuse on the body of minor D.A. on January 14, 2016, even though the Notice of Emergency Removal referred to minor M.A. only.

75.    During the hearing, Defendant CRUZ initially testified that Plaintiff had discussed visitation with her after she and Defendant PORRAS removed the minor children, implying that Defendants allowed visitation subsequent to the removal. It was not until Plaintiff's counsel questioned Defendant CRUZ further that she eventually admitted that she denied any visitation as she no longer considered Plaintiff to be a prospective adoptive parent.

76.    Towards the conclusion of the morning portion of the hearing on March 18, 2016, the juvenile dependency judge began questioning Defendant CRUZ directly;

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

the judge's questions were sharply critical of Defendant CRUZ and implied that she committed misconduct in choosing to detain the minor children.

77.     As the lunch break for the court approached, the presiding judge acknowledged the need to continue the remainder of the hearing during the afternoon calendar. At or near this point in time, county counsel Michel Eisner informed the court that she had a serious medical issue that prevented her from arguing the matter in the afternoon, despite having no difficulty proceeding earlier that morning. The court found that Ms. Eisner's representation constituted "good cause" and continued the trial hearing, demanding that Defendant PORRAS be present to testify at the next date. Later that afternoon, Ms. Eisner continued to argue other cases in juvenile court, contradicting her representation to the court that she was unable to continue for medical reasons. On information and belief, Ms. Eisner lied to the juvenile dependency court in an effort to continue the matter so as to avoid further revelations to the Court regarding Defendants' misconduct or a ruling returning the minor children to Plaintiff's care.

78.     The hearing on the emergency removal of the minor children resumed on or about June 2, 2016. As soon as Plaintiff and his counsel of record arrived, they were given a document entitled "Last Minute Information for the Court," (hereinafter "LMI") which had been filed by Defendants CRUZ and PORRAS. The LMI included representations by Defendant CRUZ that the minor children had allegedly stated that they had observed Plaintiff engage in sexual acts with a male partner, and that such

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

alleged misconduct had been discussed with the minor children's therapist – but that the therapist "would not go into detail" regarding alleged abuse with Defendant CRUZ, and instead focused on how well the minor children have bonded with their current care provider.

79.     Plaintiff's counsel objected to the inclusion of any part of the LMI based solely on the alleged statements from the therapist to Defendant CRUZ and sought that any testimony on that issue be given by the therapist themselves, rather than by general representations solely from Defendants; this objection was overruled by the court.

80.     Plaintiff testified at the hearing, and discussed the minor children's medical issues, forms of discipline, and events on the date of removal. However, when Plaintiff's counsel began to testify as to Defendant CRUZ's bias – including comments about Plaintiff's church affiliation, decision not to teach the children Spanish, and decisions regarding the children's medical care – the court cut off all further questioning and did not allow Plaintiff's counsel to even make a closing statement.

81.     During the hearing, Defendant CRUZ and/or PORRAS specifically testified that the current caregiver for the minor children intended to proceed with adopting the minor children.

82.     The judge commented that the case was the "saddest I've seen in 24 years" and stated that regardless of the allegations of abuse, it was in the best interest of the

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

minor children to stay with the care providers they had been with for the last six months since the removal – despite the fact that the vast majority of the time period was caused by delays instigated specifically by Defendants. When the judge announced his ruling, he emphasized that it appeared the minor children would be formally adopted by their current care providers.

83.     Plaintiff, who remained employed by the Los Angeles Police Department ("LAPD"), was put on administrative leave as of January 15, 2016, when Defendant COLA/DCFS notified supervising officers of the allegations made by Defendants CRUZ and PORRAS that Plaintiff physically abused the minor children, which triggered a criminal investigation into Plaintiff by the LAPD itself.  Despite the fact that Plaintiff's sexual orientation was not directly related to the allegations of physical abuse made by Defendants CRUZ and PORRAS in January, it was still conveyed to the LAPD as part of the allegations of physical abuse. This was the first time that Plaintiff's colleagues in the 77th Street Community Police Station – where Plaintiff was assigned – were made aware of Plaintiff's sexual orientation, as he was not "out" with respect to the police station or most of the Police Department.

84.     Sergeant Ietia G. Eston (#25790) of the Internal Affairs Administrative Investigation Division for the LAPD was assigned as the investigating officer for the LAPD as to possible criminal charges against Plaintiff. Sgt. Eston reviewed the allegations of abuse asserted by Defendant CRUZ, as well as the investigation already

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

done by Sgt. Becker of the LASD, and the separate investigation done by Defendant COLA/DCFS, both of which found no evidence of abuse.

85.     In a subsequent report, Sgt. Eston noted that he interviewed Sgt. Becker personally and that Plaintiff had complained that Defendant CRUZ appeared to be biased against Plaintiff because he was African-American, gay, and did not take the minor children to a Catholic church. According to the Sgt. Eston's report, Sgt. Becker did not believe removal was appropriate and could not explain why Defendants CRUZ and PORRAS chose to remove the children.

86.     Sgt. Eston's report went on to acknowledge that he contacted Defendant CRUZ on or about May 17, 2016 in order to clarify statements she allegedly documented. Sgt. Eston attempted to interview Defendant CRUZ and other employees of Defendant COLA/DCFS, but was told that he would have to obtain a subpoena in order to legally compel Defendant CRUZ to submit to an interview. Ultimately, Sgt. Eston's report acknowledged that compelling an interview of Defendant CRUZ was unnecessary in light of the prior investigations by both the LASD and Defendant COLA/DCFS that found no evidence of any physical abuse.

87.     Sgt. Eston acknowledged in his report that Defendant CRUZ's allegations "appeared to be based on [Defendant CRUZ's] opinion, not fact."

88.     Subsequent to the LAPD investigation into Defendant CRUZ's allegations, Plaintiff – who was a decorated and highly respected law enforcement officer – was

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

formally accused of several minor allegations of misconduct in the performance of his job duties as a law enforcement officer and a review hearing was scheduled. None of the allegations in any way related to the accusations of physical abuse by Defendant CRUZ.

89.    Plaintiff alleges, upon information and belief, that the subsequent allegations and pending review hearing were brought in an effort to remove Plaintiff from his position as a law enforcement officer with the LAPD, due to the fact that he was now publicly identified as a homosexual, due to the appearance of impropriety as an officer who had been accused of child abuse, or some combination thereof.

90.    Based on the potential risk of being essentially "unemployable" in the event that he is terminated at a review hearing, Plaintiff elected to resign his position as a law enforcement officer so as to preserve the possibility of working as an EMT.

91.    As a result of the conduct of Defendants, including Defendants CRUZ and PORRAS in particular, Plaintiff's career as an accomplished and respected member police officer is effectively over.

92.    In the fall of 2016, Plaintiff became re-certified as a prospective adoptive parent and elected to pursue another adoption through the County of Los Angeles. In or around September of 2016, Plaintiff and his fiancé met with a social worker employed by Defendant COLA/DCFS, and were shown a binder that contained a list of minor children that were available for adoption in the foster system for Los

COMPLAINT FOR DAMAGES

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)-446.6454

Angeles County; the social worker specifically informed Plaintiff that the list included only children whose caregivers were not pursuing adoption themselves.

93.    As Plaintiff and his partner looked through the binder, Plaintiff noticed that the minor children, M.A., D.A. and I.S., were identified as sibling brothers seeking an adoptive home, which directly contradicts the representations of Defendants on June 2, 2016 as to the anticipated adoption of the minor children by their new caregiver. This directly contradicted Defendants' testimony in or around June 2, 2016 that the minor children were going to be adopted by their current care providers.

94.    On or about October 25, 2016, Plaintiff discovered that he could not proceed with the adoption process in Los Angeles County, as he was informed by employees of Defendant COLA/DCFS that he and his fiancé were and continue to be the subject of an "indefinite hold" that prevents any minor children from being placed with Plaintiff. This "indefinite hold" exists despite the fact that each and every investigation has consistently shown that there is no evidence that Plaintiff ever engaged in any improper behavior around the minor children or abused them in any way.

95.    On information and belief, the ongoing "indefinite hold" demonstrates that the Defendants, including but not limited to Defendants CRUZ, PORRAS, and/or other employees of Defendant COLA/DCFS, have followed through on the threat conveyed by county counsel Michel Eisner on or about February 29, 2016 that Plaintiff would

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

not ever be allowed to adopt children in Los Angeles County because he chose to proceed with a trial hearing on Defendants' decision to remove the minor children from his home.

96.     As a result of the conduct of Defendants, Plaintiff has suffered severe, pervasive, and ongoing emotional distress and psychological harm, which Defendants inflicted on Plaintiff intentionally and with reckless disregard for the same.

97.     As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered serious economic harm to his professional career as a law enforcement officer, effectively ending his career with the Los Angeles Police Department and preventing Plaintiff.

98.     The actions of Defendants, and each of them, were reckless, willful, malicious, and with a conscious disregard for the civil rights of Plaintiff as well as the well-being and best interests of the minor children Such wrongful conduct necessarily entitles Plaintiff to seek punitive damages from individual Defendants' wrongful acts for the purpose of punishing said Defendants, to make an example out of them, and to discourage such misconduct in the future.

//

//

//

//

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

# FIRST CAUSE OF ACTION

## 42 U.S.C. § 1983 – 1st Amendment – Retaliation

### Against Defendants CRUZ, PORRAS, and Doe Defendants 1-10

99.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

100.    At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both Amendment I and XIV to the United States Constitution, with respect to the right of free speech, free exercise of religion, and the right to petition the government for redress under the First Amendment were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of his constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution. This right to petition includes but is not limited to Plaintiff's right to petition Defendant COLA and DCFS for administrative redress and complaints of misconduct without being subject to retaliation by Defendants as a result of such exercise of his rights.

101.    As described in more detail elsewhere in this Complaint, Defendants violated Plaintiff's rights by retaliating against Plaintiff when he complained, criticized, or otherwise communicated to Defendants CRUZ and PORRAS, and others employed by Defendant COLA, of the wrongful conduct of individual defendants. This includes but was not necessarily limited to:

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

(a) Plaintiff's decision to express disagreement with and in fact openly disagree with Defendant CRUZ's persistent demand that Plaintiff engage in medical care for the minor children in direct contradiction to the guidance of their treating physicians;

(b) Plaintiff's decision to take the minor children to United Methodist Church rather than to a Catholic church in contradiction to Defendant CRUZ's expressly stated preference;

(c) Plaintiff's decision to participate in a newspaper interview regarding his participation in the adoption system as a single gay man; and

(d) Plaintiff's decision to openly and directly dispute Defendant CRUZ's false allegations regarding Plaintiff's involvement in the minor children's medical and psychological care.

102. As a direct and proximate result of Plaintiff's decision to exercise his First Amendment rights, Defendants retaliated against Plaintiff , as described above, which specifically included but was not necessarily limited to the following examples of misconduct that occurred in response to Plaintiff's exercise of his rights:

a. Delay in adoption proceedings without lawful justification;

b. Making false allegations that Plaintiff was failing to communicate appropriately with employees of Defendant COLA/DCFS, medical care

COMPLAINT FOR DAMAGES

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

providers, or other third-parties involved in the care and adoption of the minor children;

c.   Making false allegations of physical abuse as a justification to remove the minor children from Plaintiff's care;

d.   Making false allegations of sexual misconduct in the presence of the minor children in an effort to slander Plaintiff as a gay man;

e.   Making false representations that the care providers to whom the minor children were placed were engaged in adoption proceedings, so as to justify permanent removal of the minor children; and

f.   Placing an "indefinite hold" on Plaintiff with respect to adoption approval, so as to prevent Plaintiff from ever adopting children in the future.

103.   Defendants' conduct, as set forth above, was the direct and proximate cause of severe and ongoing injury to Plaintiff, as stated elsewhere in this complaint.

104.   In addition, the individual Defendants who worked for Defendant COLA who are government officials, deliberately engaged in corruption, retaliation and violations of Plaintiffs clearly established constitutional rights.  As such, and by the nature of their conduct, the individual defendants are not entitled to qualified immunity.  Punitive damages are sought against the individual defendants employed by Defendant COLA according to proof.

//

COMPLAINT FOR DAMAGES

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

# SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983 – 5th and 14th Amendment

## Violation of Procedural and Substantive Due Process

## Against Defendants CRUZ and PORRAS, and Doe Defendants 1-10

105.   Plaintiff re-alleges, adopts, and incorporates the preceding paragraphs as if fully set forth herein.

106.   Defendants violated Plaintiff's 5th and 14th Amendment right to procedural and substantive due process by preventing Plaintiff from receiving a fundamentally fair, orderly, and just judicial proceeding, as described in this Complaint. In doing so, Defendants acted under color of law without reasonable probable cause. Defendants were deliberately indifferent to, or in the alternative were in fact motivated by a willful and malicious disregard of Plaintiff's rights.

107.   Defendants CRUZ and PORRAS, as well as unknown Doe Defendants, continually, repeatedly, and unfairly refused to conduct a competent, fair, and objective investigation and evaluation of Plaintiff's fitness to care for and adopt the minor children.  Each Defendant was responsible for evaluating the information available to them in good faith, and giving each piece of evidence proper weight in considering Plaintiff's ability to care for the minor children, but failed to do so and instead engaged in a personal, vicious, and discriminatory campaign of undermining Plaintiff's substantive and due process rights before the juvenile dependency court in a concerted effort to terminate Plaintiff's relationship as a prospective adoptive parent to the minor children.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

108.   In multiple instances as described herein, Defendants refused to communicate with or cooperate with Plaintiff, often to the point of berating Plaintiff or directly misleading Plaintiff in an effort to avoid responsibility for their own misconduct.

109.   In furtherance of their own misconduct, Defendants made false representations to the Court that were knowing, intentional, and in reckless disregard of the truth and Plaintiff's civil rights.

110.   As a result of these Defendants' actions, Plaintiff was never given a fair opportunity to retain and maintain custody of the minor children.  The actions of Defendants deprived Plaintiff of his due process rights under the 5th and 14th Amendments and in violation of his First Amendment Rights.

111.   As a result of Defendants' misconduct, Plaintiff suffered severe emotional pain and suffering, as well as economic harm in amounts to be proven at trial.

112.   In addition, the individual Defendants who worked for Defendant COLA who are government officials, deliberately engaged in corruption, retaliation and violations of Plaintiffs clearly established constitutional rights.  As such, and by the nature of their conduct, the individual defendants are not entitled to qualified immunity.  Punitive damages are sought against the individual defendants employed by Defendant COLA according to proof.

//

//

COMPLAINT FOR DAMAGES

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

**THIRD CAUSE OF ACTION**

**Violation of 42 U.S.C. § 1983 – 14th Amendment – Discrimination**

**Against Defendants CRUZ and PORRAS, and Doe Defendants 1-10**

113.   Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

114.   At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under Amendment XIV to the United States Constitution to due process of law and the equal protection of the laws as well as the right to be free from discrimination under the law were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of his constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

115.   As described in more detail elsewhere in this Complaint, Defendants violated the rights of Plaintiff by discriminating against Plaintiff due to his sexual orientation – specifically that he at all relevant times identified openly to Defendants as a homosexual.

116.   As described in more detail elsewhere in this Complaint, Defendants violated the rights of Plaintiff by discriminating against Plaintiff due to his race and/or ethnicity – specifically that Plaintiff was and is an African-American.

117.   As described in more detail elsewhere in this Complaint, Defendants violated the rights of Plaintiff by discriminating against Plaintiff due to his religious affiliation

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

– specifically that Plaintiff attended and took the minor children to United Methodist Church, rather than a Catholic church as preferred by Defendants.

118.   The actions of Defendants were willful, knowing, purposeful, discriminatory, and were done with the understanding that such actions would reasonably cause both Plaintiff to suffer severe emotional harm. The actions of Defendants were motivated not by a desire to ensure that Plaintiff complied with procedural requirements or was well-suited to care for the minor children, but instead to motivated by the desire to terminate Plaintiff's custody and care of the minor children as their prospective adoptive parent in order to have the minor children placed with a care provider that fit with Defendants' cultural and social views regarding ethnicity, religion, and/or sexual orientation.

119.   The actions of Defendants – including but not limited to Defendants CRUZ and PORRAS in particular – coincided with the timing of Plaintiff demonstrating to both Defendants and the assigned FFA social workers that Defendant  CRUZ, and possibly others, were making willful misrepresentations in a concerted effort to negatively impact Plaintiff's participation in the foster adoption process.

120.   Defendants' conduct, as set forth above, was the direct and proximate cause of severe and ongoing injury to Plaintiff as stated elsewhere in this complaint.

121.   In addition, the individual Defendants who worked for Defendant COLA who are government officials, deliberately engaged in corruption, retaliation and

COMPLAINT FOR DAMAGES

violations of Plaintiffs clearly established constitutional rights.  As such, and by the

nature of their conduct, the individual defendants are not entitled to qualified

immunity.  Punitive damages are sought against the individual defendants employed

by Defendant COLA according to proof.

**FOURTH CAUSE OF ACTION**

**Violation of Civil Rights Under 42 U.S.C. § 1983 – Monell Claim**

**Against Defendants COLA/DCFS**

122.   Plaintiff hereby incorporates the preceding paragraphs as though fully set forth

herein.

123.   Defendant COLA, by and through the individual policymakers and/or

supervisory officials, improperly, inadequately, or with deliberate indifference to the

constitutional rights of persons, grossly negligently, or with reckless disregard for

constitutional rights, failed to properly train, supervise, retrain, monitor, or take

corrective action with respect to individual employees under their supervision and

control, including in particular but not necessarily limited to Defendants CRUZ and

PORRAS, with respect to the types of wrongful conduct alleged in this complaint,

including, but not limited to the failure to enforce the law of the State of California,

the unconstitutional enforcement of local ordinances and statutes, the enforcement of

unconstitutional ordinances and statutes, and misuse of actual or perceived authority

against individuals such as Plaintiff such that each one of them is liable legally for all

injuries and/or damages sustained by Plaintiff pursuant to the legal principles set forth

in Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658 (1978),

Heller v. Bushey, 759 F.2d 1371 (9th Cir. 1986), cert. granted and reversed on other

grounds sub nom. City of Los Angeles v. Heller, 106 S.Ct. 1573 (1986), and Larez v.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

Gates, 946 F.2d 630 (9th Cir. 1991), the content of all of which is incorporated herein by this reference.

124.   Defendants were responsible for the investigation into misconduct committed by individual employees and other individually named Defendants, and disciplining the same.

125.   The policies, customs, and practices of Defendants herein described, had the following natural and foreseeable results, which were in violation of the civil rights of Plaintiff, and others:

   a.   Engaging in home interviews of minor children with goal of confirming negative events or justifications for removal, rather than a fair and impartial evaluation of the home environment;

   b.   Making false representations regarding whether a prospective adoptive parent is in regular communication with medical care providers for minor children in order to create a justification for delaying adoption proceedings;

   c.   Using a prospective adoptive parent's religious affiliations, sexual orientation, or racial/ethnic background as a basis for determining whether they are a competent care provider to minor foster children;

   d.   Demanding that a prospective adoptive parent follow the medical advice of the social worker rather than the medical advice provided by the treating physician with respect to decisions for the medical treatment of the minor foster children;

   e.   Making false allegations of physical abuse; and

   f.    Making false allegations of sexual misconduct.

126.   Defendant COLA/DCFS owed a duty to Plaintiff and others at all times to establish, implement, and follow policies, procedures, customs, and/or practices

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

which confirm and provide for the protections guaranteed them under the United States Constitution, including the 1st, 4th, 5th, and 14th Amendments; to use reasonable care to select, supervise, train, control, and review the actions of all of their agents, officers, and employees.

127.   Instead, Defendants engaged in the above-described policies, practices, and customs, all of which is not unique to Plaintiff or H.S. alone or constitutes an isolated incident, but is in fact a pervasive policy, practice, and custom of which Defendants are aware.

128.   The injuries suffered by Plaintiff, as described elsewhere herein, were directly, proximately, and foreseeably caused in part by the unconstitutional practices, policies, or customs, both written and unwritten, that at all relevant times were in full force and effect by Defendants and their employees, which were put in place or otherwise allowed to remain in place due to the tacit agreement of Defendants, various supervisors, managers, and policymakers and was further exacerbated by their refusal to properly investigate such misconduct of other individuals under their supervision and authority, or discipline the same.

129.   Defendants knew, or should have known, that by breaching the aforesaid duties and obligations that it was foreseeable that it would cause Plaintiff and others to be injured and damages by the wrongful acts and omissions as alleged herein, that such breaches occurred in contravention of public policy and as to their respective legal duties and obligations to individuals within their jurisdiction.

130.   The aforementioned policies, practices, customs, and procedures, as well as the lack of adequate training and discipline as stated and shown above, were the moving force and/or substantial factor in bringing about the constitutional deprivations complained of by Plaintiff.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

WHEREFORE, PLAINTIFFS respectfully pray and seek the following relief as to the Causes of Action stated above:

1.  For general damages according to proof at trial on each cause of action for which such damages are available,

2.  For special damages according to proof on each cause of action for which such damages are available;

3.  For compensatory damages according to proof on each cause of action for which such damages are available;

4.  For punitive damages according to proof at trial on each cause of action for which such damages are available;

5.  For reasonable attorney fees and costs of suit, as allowed under the law;

6.  For such other relief as the Court deems proper and just.

7.  Civil penalties according to law; and

8.   Any and all further relief as the Court may deem just and proper.

Date: November 15, 2016

BY:   _/S/ Daniel C. Sharpe, Esq._ _____
Vincent W. Davis, Esq.
Daniel C. Sharpe, Esq.

DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all causes of action asserted herein.

Date: November 15, 2016

BY:   _/S/ Daniel C. Sharpe, Esq._ _____
Vincent W. Davis, Esq.
Daniel C. Sharpe, Esq.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

COMPLAINT FOR DAMAGES