# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| KEITH THORNTON,<br><br>          Plaintiff,<br><br>     v.<br><br>LOS ANGELES COUNTY, *et al.*,<br><br>          Defendants. | CV 16-08482 TJH (AGRx)<br><br><br>Order<br>[36] |

The Court has considered Defendants' motion for judgment on the pleadings, together with the moving and opposing papers.

Plaintiff Keith Thornton, a former Los Angeles police officer, filed this lawsuit against the Defendants County of Los Angeles ["County"]; Daisy Cruz, a Los Angeles County Department of Children and Family Services ["DCFS"] social worker; and Carol Porras, Cruz's supervisor for violating his constitutional rights when his foster children were removed from his care. Thornton alleged claims for: (1) First Amendment retaliation against Cruz and Porras; (2) Violations of substantive and procedural due process rights against Cruz and Porras; (3) Violations of equal protection against Cruz and Porras; (4) *Monell* liability against the County. The following facts were alleged in the Complaint.

By early 2014, Thornton, an African American male, and his partner, Sergio Linares, a Hispanic male, were certified as foster parents through the Southern California Foster Family & Adoption Agency. On April 17, 2014, Thornton and Linares met with DCFS employees. Thornton and Linares agreed to be the foster parents for three sibling boys aged 3 years, 2 years, and 2 months. The children had special needs due to their fetal exposure to alcohol and drugs, and allegations of neglect and abuse. Cruz was the DCFS social worker initially assigned to supervise the foster placement. Later on, she was assigned to monitor Thornton's adoption of the children.

Throughout the foster placement, Cruz disagreed with many of Thornton's decisions, including, *inter alia*: (1) Not taking the children to visit their former foster parent, who was a friend of Cruz; (2) Following the advice of certain pediatricians to not use a corrective helmet for the 2 month old child; (3) Separating from Linares in the fall of 2014, despite participating in DCFS-mandated couples counseling; (4) Attempting to enroll the older children in a special needs educational program; (5) Not continuing the children's Spanish education; (6) Taking the children to a United Methodist Church, rather than a Catholic Church; (7) Moving from Sunland to a larger house in Palmdale, which required Cruz to travel further for home visits; (8) Giving an interview to a reporter at a DCFS-hosted foster care adoption event, and identifying himself as a single gay man in the process of adopting foster children; and (9) Following the advice of the 2 year old's therapist and not enrolling him into an emotional wellness program suggested by Cruz.

After Thornton's separation from Linares, Cruz increased the frequency of her home visits, and would begin each visit asking the children about the "bad things that happened this week". Eventually, Cruz confronted Thornton, asserting that the children's therapists had informed her that he was no longer in contact with Thornton or the children. Thornton refuted that assertion, and countered that the therapists had great difficulties reaching Cruz because she did not return their calls. Thereafter, Thornton requested a meeting with all of the social workers assigned to his adoption

case because he thought that DCFS might not be moving forward with the adoption. Cruz, then, informed Thornton that she had told Marissa Martinez, the social worker handling the adoption, to postpone the adoption because of Thornton's failure to follow her instructions.

On January 14, 2016, Mr. Thornton met with Cruz, Porras, Martinez, and other social workers at his house. Cruz repeated her prior accusations. Thornton produced a letter from a supervisor at the Children's Bureau, confirming that Thornton was in constant contact with the children's therapists, and that Cruz stopped communicating with them. The other social workers expressed their agreement with Thornton, and said they would be in touch to finalize the adoption.

At the end of the meeting, Cruz announced that she wanted to check on the children before leaving. During her check, apparently, Cruz saw a circular scratch on the oldest child's leg. Further, Cruz asserted that the middle child told her about possible abuse. Consequently, Cruz removed the children from Thornton's home.

Cruz denied Thornton's request to have supervised visits with the children, as usually permitted for a prospective adoptive parent. On February 16, 2016, a Sheriff's detective investigated the alleged abuse and concluded, in a report, that the allegations of abuse were not supported by evidence, that the children wanted to be returned to Thornton, and that the children appeared to have been coached as to their abuse allegations.

On February 29, 2016, before a Dependency Court removal hearing, DCFS's attorney commented that Thornton would never be allowed to adopt if he contested the removal. On March 15 2016, at a continuance of the removal hearing, Cruz repeatedly made false statements, *inter alia,* that: (1) She had been told by one of the children's therapist that the child reported to the therapist that Thornton engaged in sexual acts in front of the children; (2) None of the children had special needs; (3) Thornton did not keep in contact with the children's healthcare providers; and (4) She observed signs of physical abuse on the body of the middle child at the time of removal, even though the

Notice of Emergency Removal referred only to alleged injuries on the oldest child.

The Dependency Court did not rule on the abuse allegations, but it did conclude that it was in the best interests of the children for them to not be returned to Thornton because DCFS represented that the new foster parents intended to adopt them. After the hearing, the LAPD investigated the allegations of Thornton's child abuse. The LAPD, like the Sheriffs, concluded that the allegations were not based on factual evidence.

Thereafter, Thornton was recertified as a prospective adoptive parent. However, DCFS placed an "indefinite hold" on Thornton, which prevents him from fostering or adopting children.

The County, now, moves for judgment on the pleadings.

Judgment on the pleadings, under Federal Rule of Civil Procedure 12(c), is proper if the moving party is entitled to judgment as a matter of law. *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998). When considering this motion, the Court must deem all of the allegations in Thornton's complaint as true, and must construe his allegations in the light most favorable to him. *See Gen. Conference Corp. Of Seventh-Day Adventists v. Seventh-Day Adventists Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). Moreover, the Court must draw all reasonable inferences from Thornton's allegations. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

Any person who, under the color of law, deprives another of their rights under the Constitution or other federal laws, shall be liable to the injured party. 42 U.S.C. § 1983. However, government officials performing discretionary functions are entitled to qualified immunity if their conduct did not violate clearly established statutory or constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A right is not clearly established unless the contours were sufficiently definite that any

reasonable official in the defendant's shoes would have understood that she was violating it. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

**First Amendment Retaliation**

It is clearly established that a police officer violates the First Amendment when the officer's actions are motivated out of retaliation for a citizen's speech. *Ford v. City of Yakima*, 706 F.3d 1188, 1196 (9th Cir. 2013). However, there is no clearly established precedent as to First Amendment retaliation in connection with a social worker's motivation to remove children from a foster home. *See Mann v. Cty. Of San Diego*, 147 F. Supp. 3d 1066, 1087-88 (S.D. Cal. 2015). Unless the existing precedent "squarely governs the specific facts at issue," there is no clearly established law. *Kisela*, 138 S. Ct. at 1153. Therefore, Cruz and Porras are entitled to qualified immunity from Thornton's First Amendment retaliation claim.

**Substantive Due Process**

Biological parents enjoy a constitutionally-protected liberty interest in their familial relationships with their children. *Smith v. Org. of Foster Families for Equality & Reform*, 431 U.S. 816, 844-45 (1977). However, unlike biological parents, foster parents' rights flow from the laws of the state that permitted them to be foster parents. *Smith*, 431 U.S. at 845-46. Here, California's foster parent laws do not "create a protected liberty interest in the continued custody of a foster child." *Huk v. Cty. of Santa Barbara*, 650 F. App'x. 365, 367 (9th Cir. 2016). This is true even if a foster parent lost custody through allegedly deceptive means. *Huk*, 650 F. App'x. at 367. Thus, Thornton, as a foster parent, cannot assert claims for violation of substantive due process.

In 1995, the Ninth Circuit held that there was no clearly established law that a prospective adoptive parent has a fundamental liberty interest entitled to the protection of the Due Process Clause. *Mullins v. State of Or.*, 57 F.3d 789, 794 (9th Cir. 1995). In 2016, the Ninth Circuit adopted the holding of a Tenth Circuit case, *Elwell v. Byers*, 699 F.3d 1208, 1217 (10th Cir. 2012), where the Tenth Circuit concluded that foster

parents, who had cared for their child for nearly his entire life with no biological parents in the picture and who were on the verge of adopting the foster child, had a protectable liberty interest. *Huk*, 650 F. App'x at 367. However, *Huk* cannot be used to show that the law was clearly established because the facts of the instant case preceded *Huk*. Therefore, because the law was not clearly established at the time of the alleged violation, Cruz and Porras are entitled to qualified immunity as to the substantive due process claim based on Thornton's allegations that he was on the verge of adoption.

**Procedural Due Process**

It is clearly established that purposefully falsifying evidence or testimony in a child abuse investigation violates procedural due process rights only when the falsification results in the deprivation of a liberty or property interest. *Constanich v. Dep't of Soc. Serv.*, 627 F.3d 1101, 1115 (9th Cir. 2010). However, as discussed above, Thornton had no constitutionally-protected liberty interest in being a foster parent. *See Huk*, 650 F. App'x at 367. Further, there was no clearly established liberty interest for prospective adoptive parents at the time that the alleged falsification occurred in the instant case. *Huk*, 650 F. App'x at 367. Therefore, Cruz and Porras are entitled to qualified immunity from Thornton's procedural due process claim.

**Equal Protection**

The County relied on *United States v. Whitlock*, 639 F.3d 935 (9th Cir. 2011), to argue that, because due process and equal protection rights are similar, Thornton's equal protection claim should be dismissed because it was, merely, a recasting of his due process claim. In *Whitlock*, the Ninth Circuit held that "in challenges to sentencing regimes, an argument based on equal protection essentially duplicates an argument based on due process." *Whitlock*, 639 F.3d at 940. Therefore, when Whitlock's Due process argument failed, so did his equal protection argument. *Whitlock*, 639 F.3d at 940.

However, due process and equal protection rights merge only under specific

situations. Generally, due process and equal protection are independent principles that "are not always co-extensive." *Obergefell v. Hodges*, ___ U.S. ___, 135 S. Ct. 2584, 2590 (2015). *Whitlock* does not support the merger of Thornton's due process and equal protection claims as that case considered those claims only in the limited context of challenges to criminal sentencing and the revocation of supervised release.

***Monell***

Because Thornton's equal protection claim remains, he may assert a *Monell* claim against the County because he alleged that the unconstitutional actions of Cruz and Porras that violated his equal protection rights were done in accordance with a custom, policy or practice of the County. *See Monell v. Dept. Of Soc. Services of the City of N.Y.*, 436 U.S. 658, 694 (1978). Thornton alleged that there was a County policy for social workers to, *inter alia,* evaluate the competency of a prospective adoptive parent based on the parent's religious affiliation, racial/ethnic background, or sexual orientation. Considering Thornton's allegations in the light most favorable to him, the Court cannot say that the County is entitled to judgment as a matter of law on the *Monell* claim. *See Gen. Conference Corp. of Seventh-Day Adventists*, 887 F.2d at 230.

Accordingly,

It is Ordered that the motion for judgment on the pleadings be, and hereby is, Granted as to Thornton's First Amendment retaliation, procedural due process, and substantive due process claims.

It is further Ordered that the motion for judgment on the pleadings be, and hereby is, Denied as to Thornton's equal protection and *Monell* claims.

Date: August 14, 2018

_____
Terry J. Hatter, Jr.
Senior United States District Judge